And we move to the next case, U.S. v. Sanchez-Jimenez. We're missing Mr. Villapiano. There he is. All right. Okay. Counsel, you may begin. Thank you. Good morning, Your Honors. May it please the Court, Counsel. My name is Quinn Michalis, and I'm representing the appellant Ezequiel Sanchez-Jimenez. The issue before the Court is whether Mr. Sanchez-Jimenez's sentence of 30 months' imprisonment, a sentence 42 percent higher than the high end of the advisory guideline range, whether that sentence is substantively unreasonable. When a sentence falls outside the advisory guideline range, a sentencing court must sufficiently justify an above-guideline sentence and provide an adequate explanation particularized to the specific defendant. The issue here is that although the sentencing judge recognized that Mr. Sanchez-Jimenez's previous illegal reentries were accounted for in both his offense-level calculation and his criminal history calculation, the guidelines didn't go far enough, in the judge's opinion, to punish Mr. Sanchez-Jimenez's recidivism. Mr. Sanchez-Jimenez was sentenced for illegal reentry under the 2018 guidelines, specifically under guideline section 2L1.2. His offense level was enhanced by four points because of a previous illegal reentry, and he also received criminal history points based on two previous illegal reentry convictions and a previous conviction for the unlawful possession of a firearm. Now, while Mr. Sanchez-Jimenez does have multiple immigration offenses in his background, the illegal reentry guidelines make no distinction between people who reentered the United States once or, in Mr. Sanchez-Jimenez's case, multiple times, and this is by design. The illegal reentry guidelines were amended in 2016 to more adequately account for recidivisms, especially within the context that we have here, which is properly sentencing defendants with multiple previous illegal reentries. Prior to the 2016 amendment, the illegal reentry guidelines did not specifically include enhancements for previous reentry convictions. After 2016, the guidelines specifically provided a tiered enhancement scheme for previous reentry convictions. It gave a two-level enhancement for having two or more misdemeanor illegal entry convictions and a four-level enhancement for having a previous felony illegal reentry conviction. This 2016 enhancement came about as a result of the Sentencing Commission's analysis of national data, which indicated that most illegal reentry defendants have multiple previous reentry convictions and determined that a four-level enhancement was appropriate, whether a defendant had one previous felony illegal reentry conviction or, as we have here, multiple felony reentry convictions. In addition to receiving a four-level enhancement for his previous illegal reentry convictions, Mr. Sanchez-Jimenez also received six criminal history points for his previous felony reentry convictions. Both parties agreed that the appropriately calculated sentencing range was 15 to 21 months. However, Mr. Sanchez-Jimenez was sentenced to an above-guideline sentence of 30 months based on the sentencing court's determination that the guidelines did not adequately take into account Mr. Sanchez-Jimenez's previous immigration history. The sentencing court stated that even in a vacuum, this offense required a significant sentence, indicating that the court did not believe the immigration sentencing guidelines went far enough in its punishment, not just for this defendant but for all immigration defendants. To shore up that statement, the court repeatedly discussed how immigration crimes are an attack on the fundamental integrity of the country, on its sovereignty, and that a country that cannot protect its borders will not be a country for long. These are not considerations that are particularized to Mr. Sanchez-Jimenez. Although the court cited Mr. Sanchez-Jimenez's education level, his vocational skills, his family situation as factors it was considering in fashioning the sentence, it framed those considerations in terms of recidivism, a theme the court returned to again and again, and found that the guidelines did not adequately account for Mr. Sanchez-Jimenez's risk of recidivism. However, the sentencing commission addressed this very fact that immigration defendants are more often than not recidivists. The commission found that people who reenter the country illegally do so on average of 3.2 times. The risk of recidivism for immigration defendants is essentially baked into the guidelines. What you seem to be describing, in essence, is a district judge's policy disagreement with the 2016 amendments. Is that right? Essentially, yes. Pardon me. You were about to take the words out of my mouth. Go ahead. While judges are allowed to make policy disagreements with a guideline, even after Booker, when the guidelines became advisory, courts still must give respectful consideration to the advisory guidelines because they are developed by the sentencing commission. That has, according to Kimbrough, a capacity that courts lack to base its determinations on empirical data and national experience. So even after Kimbrough and its progeny, a sentencing court is allowed to disagree with a particular guideline when the commission's view is not based on empirical data or national experience. But the immigration guidelines were amended in 2016 to better reflect national experience and reflect that empirical data. So the issue that the sentencing judge took was not that the guidelines failed to account for recidivism, but that they didn't do enough to punish recidivism, which I think is essentially the guidelines were created to address that very point. And so the policy disagreement here is that just that they didn't go far enough in punishing recidivists. But why is that wrong? I mean, is that outside the judge's authority? I think it is when the guideline itself is based on considered reasoning and empirical data and national experience, which is what the. Is that what Kimbrough says? When Kimbrough allows the judges to disagree based on policy decisions, yes. But I think baked into Kimbrough is the idea that it's I guess it's more problematic if the judge or I guess sorry, let me take that back. It's less problematic if the judge is doing that when the guideline itself is not based on that empirical data and national experience, which our position is that the guidelines here are based on the judge's experience. What about the judge's experience locally? I mean, I suppose that that would be one factor that the judge can consider, but one factor, not the entirety of the impact of the factors that the judge would consider. Just to respond further to what the Sentencing Commission did with respect to immigration defendants was that it recognized that immigration defendants are more often than not recidivists. And the commission found that people who ran to the country do so on a rate of 3.2 times. When the commission developed this particular guideline, they chose to make no distinction between defendants who have one illegal reentry and those who have more than one illegal reentry, specifically because the Sentencing Commission recognized that illegal reentry recidivists recidivate for reasons relating to their families, their economic prospects, and the conditions in their home countries, which is what was the case for Mr. Sanchez-Gimenez, and which are considerations that are usually not present to that same degree in other types of federal offenses. So in addition, the criminal history calculation did account for Mr. Sanchez-Gimenez's two previous felony convictions for illegal reentry. So not only did Mr. Sanchez-Gimenez receive a recidivist enhancement within his offense level, but his criminal history also reflected his two previous criminal convictions for illegal reentry. And the purpose of the criminal history calculation is essentially to predict recidivism. So both of these calculations took Mr. Sanchez-Gimenez's increased risk of recidivism properly into account, and under the reasoned and considered view of the Sentencing Commission, Mr. Sanchez-Gimenez's guideline range was 15 to 21 months. And that was a sentence that would be sufficient but not greater than necessary to address that increased risk of recidivism. The sentencing court did not tailor its sentence to the particulars of Mr. Sanchez-Gimenez, and instead sentenced Mr. Sanchez-Gimenez based on a disagreement with the guidelines lenient treatment of immigration recidivists. And I will reserve the rest of my time for rebuttal. Thank you, counsel. Mr. Villalpiano? Good morning, and may it please the court, Ramon Villalpando on behalf of the United States. The district court did not abuse its discretion in sentencing the defendant in this case to an above guidelines term of 30 months' imprisonment. The sentence was the product of the district court's reasonable application of the Section 3553A factors to the facts before it, and was not the result of a wholesale disagreement with the guidelines treatment of illegal reentry offenses. And I just want to be clear on that last point because it was a theme in some of the questions and the answers that were provided a few minutes ago. The district court here did not categorically oppose or disagree with the guidelines treatment of illegal reentry offenses. It tailored its analysis and its consideration of the guidelines to the specific facts before it. And in this case, it was faced with a record that, in the district court's view, reflected an extraordinary history of recidivism. The district court, the defendant has approximately 19 illegal reentries, many of which did not result in prosecutions. For those cases where he was prosecuted, the defendant received increasing terms of imprisonment. For his last illegal reentry prosecution, the defendant received a total of 23 months in prison. But those increasing terms of imprisonment did not deter the defendant from continuing his pattern of illegal conduct. The district court, therefore, reasonably determined that an incrementally higher sentence in this case would address the issue of recidivism posed by the defendant in this case. But the district court's analysis wasn't solely focused on the issue of recidivism. The district court went through a number of the Section 3553A factors in a very thoughtful way. It considered the defendant's criminal history aside from his illegal reentry offenses. It considered his family ties, both in Chicago and in Mexico. It considered his employment history and his limited education. So the court very much considered the facts before it with respect to this defendant and provided a very thoughtful analysis under Section 3553A. And after considering all of those facts, the court here determined that a 30-month sentence was sufficient but not greater than necessary to achieve the purposes of sentencing. So if the court doesn't have any questions, the government would ask the court to affirm the district court's judgment for the reasons provided in the government's brief entering argument today.  Thank you. I just want to conclude by saying that by its nature, illegal reentry cases are essentially offenses that criminalize recidivist behavior. And we cited a case, U.S. versus Warner, which stated that a variant sentence is most likely to pass muster if it is based on consideration particular to the defendant or the case, as opposed to normal incidents of the offense or the judge's wholesale disagreement with the guidelines. And we would just note that recidivism is a normal incident of the offense. And we would just ask that the sentence be vacated and remanded for resentencing. Thank you. Thank you, counsel. Thanks to both counsel and the cases taken under advisement.